**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURA LASPISA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KRAFT HEINZ FOODS COMPANY,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Laura LaSpisa, by and through her counsel, Denlea & Carton LLP, respectfully files this Class Action Complaint on behalf of herself and a class of similarly-situated consumers in New York against Defendant Kraft Heinz Foods Company ("Defendant" or "Kraft Heinz"). Plaintiff makes the following allegations based on the investigation of her counsel, and based upon information and belief, except as to those allegations specifically pertaining to herself, which are based on her personal knowledge.

**PRELIMINARY STATEMENT**

1. This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that Defendant has made in connection with the sale of its pre-packaged meal kits sold under the brand name "Lunchables." For over thirty years, parents have purchased Lunchables products trusting them to be a safe and nutritious snack option for their children. That parental trust, as it turns out, was misplaced. As recently proven by Consumer Reports, Kraft Heinz's Lunchables meal kits are contaminated with levels of heavy metals that no reasonable parent would want their children to eat in a single meal.

1

2.      First introduced in the 1980s, Lunchables are the ultimate convenience food, whose packaging promises consumers a fun, protein-packed and fresh alternative to a conventional, from-scratch meal.  Kraft Heinz sells more than thirty different kinds of Lunchables Meal Kits and Snack Kits, three varieties of which (Lunchables Turkey and Cheddar Cracker Stackers, Lunchables Pizza with Pepperoni and Lunchables Easy Cheese Pizza) were tested by Consumer Reports and found to contain high levels of lead and cadmium, as well as phthalates.  A complete list of Kraft Heinz's Lunchables Meal Kits and Snack Kits, including the three varieties tested by Consumer Reports, are attached hereto as Exhibit "A," and referred to herein as "Kraft Heinz Lunchables," "Lunchables," or "Class Products."

3.      Kraft Heinz Lunchables are sold widely throughout New York State in grocery and convenience stores.  Lunchables are marketed primarily at and for consumption by children, with their "building kits" – such as the Turkey and Cheddar Cracker Stackers – encouraging children to play creatively with their food before they eat it.  The appeal to parents is captured by the Lunchables's slogan: "foods kids love and parents trust."



4. Plaintiff Laura LaSpisa and other Class Members are New York consumers who trusted Lunchables and purchased the products believing them to be safe and nutritious for their children to consume.

5. Recently, however, Consumer Reports released findings from a study demonstrating that Lunchables are not a good choice for a child's lunch. Of particular concern, the study, which tested 12 store-bought lunch and snack kits, found that Lunchables contained high levels of lead and cadmium, as well as phthalates, a group of chemicals used to make plastic more durable, which can leach into any food containing fat and be absorbed by the human body.[1]

6. Lead is a potent neurotoxin that can accumulate in the body over time and is harmful to children at any level.[2] Cadmium and phthalates are also contaminants that are especially hazardous to children.

7. Consumers, like Plaintiff Laura LaSpisa, and similarly situated class members, trust and expect that the food they purchase will not contain any harmful substance that can cause harm to themselves or their children. Prior to learning about the results of the Consumer Report study, Ms. LaSpisa had no reason to know and did not know that Lunchables contained harmful substances such as lead, cadmium and phthalates.

8. Unwilling to feed their children food contaminated with high lead levels, cadmium and phthalates, Ms. LaSpisa and thousands of other consumers in New York have discarded or will discard Lunchables meal and snack kits, rendering their purchases of the products worthless.

---

[1] Kevin Laria, *Should You Pack Lunchables For Your Kid's School Lunch*, Consumer Reports (April 9, 2024), Should You Pack Lunchables for Your Kid's School Lunch? - Consumer Reports (last visited April 12, 2024).
[2] Talia Sanders, Yiming Liu, *et al*. (2009). *Neurotoxic Effects and Biomarkers of Lead Exposure: a Review.* 24 Reviews On Environmental Health, 15–45, Neurotoxic Effects and Biomarkers of Lead Exposure: A Review - PMC (nih.gov)

Thus, Plaintiff and other Class Members have suffered an economic loss as a result of Defendant's conduct.

9. Defendant has improperly, deceptively and misleadingly labeled and marketed their Lunchables products to reasonable consumers, like Ms. LaSpisa, as a food "Parents Trust" and by omitting and not disclosing that Lunchables are contaminated with lead, cadmium, and phthalates.

10. This omission leads reasonable consumers to believe they are purchasing a product that is safe and nutritious for their children to consume when in fact it is not.

11. As a result, consumers such as Ms. LaSpisa and other Class Members have been injured by paying for an unsafe product which they cannot feed their families and which they will have to discard. In short, Kraft Heinz has betrayed the trust of parent consumers throughout New York.

## **THE PARTIES**

12. Plaintiff Laura LaSpisa is an individual who resides in White Plains, New York. Ms. LaSpisa is a mother whose children enjoyed eating Lunchables meal kits that she purchased for them, including Lunchables Extra Cheesy Pizza and Lunchables Pizza with Pepperoni.

13. Defendant Kraft Heinz Foods Company, LLC, is a limited liability company organized under the laws of Pennsylvania with co-headquarters in Chicago, Illinois and Pittsburgh, Pennsylvania, that produces and distributes numerous consumer brands, including Lunchables. Upon information and belief, Kraft Heinz's members are Kraft Heinz Intermediate Corporation II and HJH Development Corporation, both of which are Delaware corporations with principal places of business in Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

15. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

16. This Court may exercise jurisdiction over the Defendant because it has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

18. New York law governs the state law claims asserted herein by Plaintiff Laura LaSpisa and the New York class she seeks to represent.

19. New York has a substantial interest in protecting the rights and interests of New York residents against wrongdoing by companies that market and distribute their products within the State of New York.

**FACTUAL BACKGROUND**

I. **Kraft Heinz Markets Lunchables as Safe and Nutritious for Children To Consume When, in Fact, They Contain Lead, Cadmium and Phthalates**

20. Since the late 1980s, Lunchables have been a "go-to" meal solution for busy parents seeking to satisfy their children with food that is convenient, safe, and nutritious, and the brand now represents a billion-dollar business for Kraft Heinz.[3] Kraft Heinz sells dozens of Lunchables products, most featuring some type of processed meat and cheese paired with crackers, and has publicly committed to making the pre-packaged meals more nutritious by cutting sodium, sugar and saturated fat.[4]

21. Lunchables have become so popular among children and parents that some school cafeterias, with the blessing of the National School Lunch Program (NSLP), are now offering a slightly modified version of them as a choice for student lunch.[5]

22. Despite its public commitment to improving the nutritional content of Lunchables, Kraft Heinz has betrayed the trust of parents by failing to identify and either remove or reduce more insidious ingredients lurking in the products: lead, cadmium, and phthalates.

23. Even low levels of lead can impact learning, academic achievement, and ability to pay attention.[6] The EPA has cautioned that "[i]n children, low levels of exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing and impaired formation and function of blood cells."[7] Even in adults, cumulative

---

[3] Jesse Newman, *Kraft Heinz Sees a $25 Billion Opportunity. It Starts With Lunchables*, Wall Street Journal, Kraft Heinz Sees a $25 Billion Opportunity—in Schools - WSJ (last visited on April 11, 2024)
[4] Newman, *supra*.
[5] Lenny Bernstein, *et al., How Lunchables Ended Up on School Lunch Trays,* Podcast, Washington Post, October 17, 2023, How Lunchables ended up on school lunch trays - The Washington Post, (last visited April 11, 2024).
[6] Centers for Disease Control and Prevention, *Childhood Lead Poisoning Prevention*, Lead Poisoning Prevention | Lead | CDC, (last visited April 12, 2024.
[7] EPA, *Basic Information About Lead in Drinking Water*, Basic Information about Lead in Drinking Water | US EPA, (last visited April 11, 2024)

low level exposure can have adverse impacts on cognitive function and can lead to neurodegenerative diseases.[8]

24. Similarly, children are more vulnerable of the effects of exposure to cadmium, which has been linked to learning disabilities and attention deficit hyperactivity disorder (ADHD),[9] and phthalates.  Phthalates, a chemical substance that can be found in foods exposed to plastics during the production, packing or delivery process, have the potential to impact the endocrine and reproductive systems.  Health concerns linked to phthalates exposure in children include weight gain, diabetes, increased risk of thyroid cancer, higher blood pressure, precocious puberty, allergy, asthma, delayed neurodevelopment and social impairment.[10]

25. Consumers lack any meaningful ability to test for or ascertain whether a product contains certain harmful substances such as lead, cadmium and phthalates.  Instead, they rely on food manufacturers to market a product that is safe and to notify them if a product contains potentially harmful substances so that they can make an informed decision whether to buy it.

26. The packaging of Lunchables is devoid of any hint that the product contains lead, cadmium, and phthalates. To the contrary, Lunchables are specifically marketed as nutritious and a product parents can trust to feed to their children.

27. Yet, Consumer Reports' testing confirmed the presence of all three harmful substances in Lunchables Turkey and Cheddar Cracker Stackers, Lunchables Extra Cheesy Pizza, and Lunchables Pizza with Pepperoni, with lead and cadmium levels higher in Lunchables brand products than any other tested prepackaged meal kit.

---

[8]Talia Sanders, Y. Liu, *et al*. (2009). *Neurotoxic effects and biomarkers of lead exposure: a review*. 24 Reviews On Environmental Health, 15–45, Neurotoxic Effects and Biomarkers of Lead Exposure: A Review - PMC (nih.gov).
[9] Lalit Chandravanshi, Kunal Shiv & Sudhir Kumar. (2021). *Developmental Toxicity of Cadmium in Infants and Children: a Review*. 36 Environmental Analysis, Health and Toxicology, *36*(1), e2021003, https://doi.org/10.5620/eaht.2021003
[10]Yufei Wang & Haieng Qian. (2021). *Phthalates and Their Impacts on Human Health.* 9 Healthcare (Basel), Phthalates and Their Impacts on Human Health - PMC (nih.gov).

28. Consumer Reports found these higher levels of lead and cadmium especially concerning because "[t]hat's a relatively high dose of heavy metals, given the small serving sizes of the products, which range from just 2 to 4 ounces."[11] Because even one meal kit would put a child near their daily limit for lead exposure, "if a child gets more than half the daily limit for lead for so few calories, there's little room for potential exposure from other foods, drinking water or the environment."[12]

29. Consumer Reports was so concerned about the lead, cadmium, phthalates, and sodium levels in prepackaged meal kits such as Lunchables that it concluded "[w]e don't think anybody should regularly eat these products, and they definitely shouldn't be considered a healthy school lunch."[13] Consumer Reports has now called on the USDA to remove Lunchables food kits from the NSLP.[14]

30. Despite the Consumer Reports' findings, Kraft Heinz is standing behind Lunchables and has not recalled any of its Lunchables products or offered refunds to consumers.[15]

31. Kraft Heinz is a large and sophisticated company that has been in the business of producing, manufacturing, selling, and distributing food products such as Lunchables for many years. As a food manufacturer, Kraft Heinz is required to develop and implement preventative controls to ensure that contaminants such as lead do not get into food during the manufacturing

---

[11] Kevin Laria, *Should You Pack Lunchables For Your Kid's School Lunch*, Consumer Reports (April 9, 2024), Should You Pack Lunchables for Your Kid's School Lunch? - Consumer Reports (last visited April 12, 2024).
[12] Laria, *supra*.
[13] Laria, *supra*.
[14] Consumer Reports, Press Release, April 9, 2024, Consumer Reports urges USDA to remove Lunchables From National School Lunch Program)(last visited April 12, 2024)
[15] Lauren Weber, *Lunchables Under Fire After Reports Concerning Lead, Sodium levels,* The Washington Post, April 10, 2024, https://www.washingtonpost.com/health/2024/04/10/lunchables-lead-consumer-reports-school-cafeteria/ (last visited April 12, 2024).

process, and its facilities must maintain records of its Food Safety Plans.[16] Those Plans are not publicly available.

32. As a result, Kraft Heinz has superior knowledge regarding hazardous contaminants in its products and has a duty to inform consumers, like Ms. LaSpisa and other Class Members, about those contaminants.

33. Notwithstanding this knowledge, Kraft Heinz failed to disclose on its Lunchables packaging or otherwise that its products contain lead, cadmium and phthalates, and instead misleadingly marketed Lunchables as products that parents could "trust."

34. Moreover, although Kraft Heinz lists the Lunchables ingredients on the package and its website, it does not disclose that the products contain lead, cadmium and phthalates. For example, this is the ingredient list for Turkey & Cheddar Cheese with Crackers Snack Kit:[17]

**Ingredients**

ROAST WHITE TURKEY - CURED - SMOKE FLAVOR ADDED (WHITE TURKEY, WATER, POTASSIUM LACTATE, CONTAINS LESS THAN 2% OF MODIFIED CORNSTARCH, DEXTROSE, SALT, CARRAGEENAN, SODIUM PHOSPHATES, SODIUM DIACETATE, POTASSIUM SALTS, SODIUM ASCORBATE, NATURAL AND ARTIFICIAL FLAVOR, SODIUM NITRITE, SMOKE FLAVOR); CHEDDAR PASTEURIZED PREPARED CHEESE PRODUCT (MILK, WATER, MILKFAT, MILK PROTEIN CONCENTRATE, WHEY, WHEY PROTEIN CONCENTRATE, SODIUM CITRATE, SALT, LACTIC ACID, SORBIC ACID AS A PRESERVATIVE, CHEESE CULTURE, OLEORESIN PAPRIKA [COLOR], ENZYMES, ANNATTO [COLOR], WITH SUNFLOWER LECITHIN ADDED FOR SLICE SEPARATION), CONTAINS: MILK; CRACKERS (ENRICHED FLOUR [WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], VEGETABLE OIL SHORTENING (CANOLA OIL AND/OR FRACTIONATED PALM OIL, AND/OR SOYBEAN OIL, AND/OR PALM OIL), SUGAR, CONTAINS LESS THAN 2% OF SALT, BAKING SODA, SOY LECITHIN, NATURAL TYPE FLAVOR), CONTAINS: WHEAT, SOY.

35. Kraft Heinz's false, misleading and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

---

[16] FDA, *FSMA [Food Safety Modernization Act] Final Rule for Preventive Controls for Human Food*, FSMA Final Rule for Preventive Controls for Human Food | FDA (last visited April 11, 2024).
[17] Kraft Heinz, Turkey & Cheddar Cheese with Crackers Snack Kit (lunchables.com), (last visited April 12, 2024).

## II.    Plaintiff Purchased Lunchables Relying on Defendant's Representations that the Products Were Safe For Her Children to Consume

36.     Plaintiff Laura LaSpisa has two elementary school age sons who have regularly consumed Lunchables for over a year.  Ms. LaSpisa's sons enjoy the flavors of Lunchables, particularly Lunchables Pizza With Pepperoni and Lunchables Extra Cheesy Pizza, and the feeling of independence they get from assembling their own meals.  They also ate Lunchables Cracker Stacker varieties.

37.     Prior to purchasing Lunchables, Ms. LaSpisa was exposed to Kraft Heinz's marketing and trusted it to be a safe and nutritious product to feed her children.  As a mother, Ms. LaSpisa would never feed anything to her children that she had reason to believe is contaminated with significant levels of heavy metals and phthalates.

38.     Before learning about the results of the Consumer Reports' study, Ms. LaSpisa routinely sent Lunchables with the boys to school for their lunch, alternating the product with sandwiches, leftovers, or some other from-scratch meal.  The boys also ate a Lunchables-based meal at home approximately twice per week.

39.     Each month, Ms. LaSpisa would buy Lunchables in bulk quantities at the Stop & Shop in White Plains, New York, and freeze them until use.

40.     After learning of Consumer Reports' findings about the presence of lead, cadmium and phthalates from her Facebook group and other social media sources, Ms. LaSpisa, as a responsible parent concerned for her children's welfare, discarded the Lunchables meal kits which remained in her freezer.

41.      Had Ms. LaSpisa known that Lunchables contained lead, cadmium, and phthalates, she would not have purchased the meal kits.  Having purchased Lunchables meal kits

10

that she can no longer feed her children but has been forced to discard, she has suffered an economic loss.

## CLASS DEFINITION AND ALLEGATIONS

42. Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "New York Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York Lunchables Products, including Lunchables Turkey and Cheddar Cracker Stackers, Lunchables Pizza with Pepperoni, and Lunchables Extra Cheesy Pizza, manufactured, marketed, distributed, and/or sold by Defendant which Defendant warranted as being safe for children to consume (the "Class Products"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and who purchased the Class Products for resale.

43. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

44. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

45. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant had actual knowledge of the unsafe nature of Lunchables.

- Whether Defendant concealed the unsafe nature of Lunchables.

- Whether Defendant made false and/or misleading statements or omissions to the Class and the public concerning the contents of their products.

- Whether Class Members have sustained a monetary loss and the proper measure of that loss.

- Whether, as result of Defendant's misconduct, the Class is entitled to monetary and statutory damages.

46. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's misrepresentation that the Class Products were safe for children to consume.

47. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

48. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased the Class Products, and she was harmed by Defendant's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased the Class Products. Plaintiff has retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to fully and zealously advocate on behalf of the class.

49. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be

12

entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

50.     Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

### COUNT I
**(Violation of New York General Business Law Section 349)**

51.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50 as if fully set forth herein.

52.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York."

53. Defendant has made false representations and/or omissions about their Lunchables meal kits, the representations are deceptive, and have the capacity, tendency and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that Defendant's Lunchables meals kits are safe for children to consume and do not contain elevated levels of contaminants such as lead, cadmium and phthalates. In reality, Defendant's Lunchables meal kits are not safe for children to consume and do contain elevated levels of those contaminants. Defendant made the representations about the Lunchables meal kits, those representations were misleading in a material respect to consumers, and resulted in the purchase of Defendant's products.

54. By labeling, advertising, marketing, distributing, and/or selling the Class Products to Plaintiff and the other Class members as safe for children to consume, Defendant engaged in, and continues to engage in, deceptive acts and practices because the Class Products are not safe for children to consume.

55. In taking these actions, Defendant failed to disclose material information about its product, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Products.

56. Defendant has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Products to consumers.

57. Defendant's conduct was consumer oriented.

58. Defendant engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

59. Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By

virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing the Class Products which are not what Defendant represents them to be.

60. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

61. Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

**COUNT II**
**(Violation of New York General Business Law Section 350)**

62. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 61 as if fully set forth herein.

63. Defendant's labeling, marketing, and advertising of the Class Products is "misleading in a material respect," as it fails to disclose to consumers material information in Defendant's sole possession and, thus, is "false advertising."

64. No rational individual would purchase the Class Products if that individual knew that the Class Products are not safe for children to consume which is how Defendant markets the Class Products.

65. Defendant's advertisements and marketing of the Class Products as safe for children to consume were consumer oriented.

66. Defendant's advertisements and marketing of the Class Products as safe for children to consume were misleading in a material respect.

67. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by having to discard products that they can no longer feed their children on account of the false claim that it was safe for children to consume.

68. Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

69. Defendant continues to violate Section 350 of the New York General Business Law and continues to aggrieve Plaintiff and the members of the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action, pursuant to FRCP 23, comprised of the Class as defined above as soon as practicable, designating Plaintiff as the named Class representative and designating the undersigned as Class Counsel.

B.      On Plaintiff's Count I, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.      On Plaintiff Count II, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.      On Counts I and II, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.      Awarding Plaintiffs and their respective class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      April 15, 2024
            White Plains, New York

**DENLEA & CARTON LLP**

By:   /s/ Jeffrey I. Carton
      Jeffrey I. Carton, Esq.
      Catherine H. Friesen, Esq.
      2 Westchester Park Drive, Suite 410
      White Plains, New York 10604
      Tel.: (914) 331-0100
      Fax: (914) 331-0105
      jcarton@denleacarton.com
      cfriesen@denleacarton.com